UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **CHARLES GOBER,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:21-cv-01289-ACA |
| } | |
| **COMISSIONER,** } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| } | |
| **Defendant.** } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Charles Gober appeals the decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

### I.     PROCEDURAL HISTORY

Mr. Gober applied for a period of disability and disability insurance benefits in August 2019, alleging disability beginning June 24, 2019. (R. at 155–161). The Commissioner initially denied Mr. Gober's claim and his request for reconsideration (*id.* at 87–92, 98–100), and Mr. Gober requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 102–103). After holding a hearing (r. at 35–56), the ALJ issued an unfavorable decision (*id.* at 17–34). The Appeals Council denied

Mr. Gober's request for review (*id.* at 1–3), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ

does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Gober had not engaged in substantial gainful activity since his June 24, 2019 alleged onset date. (R. at 22). The ALJ found that Mr. Gober's generalized osteoarthritis, ischial bursitis, spondylolisthesis, and piriformis syndrome were severe impairments, but that his hypertension, hyperlipidemia, adjustment disorder with mixed anxiety and depressed mood, avascular necrosis of the right femoral head, chronic obstructive pulmonary disease, and bronchitis were non-severe impairments. (*Id.* at 22–23). The ALJ then concluded that Mr. Gober does not suffer from an impairment or combination of

3

impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 23–24).

After considering the evidence of the record, the ALJ determined that Mr. Gober had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he faced some additional physical, postural, and environmental limitations. (R. at 25). Based on this residual functional capacity, the ALJ found that Mr. Gober was unable to perform any past relevant work. (*Id.* at 28). But based on the testimony of a vocational expert, the ALJ concluded that jobs existed in significant numbers in the national economy that Mr. Gober could perform, including small parts assembler, laundry folder, and hand packager. (*Id.* at 29). Accordingly, the ALJ determined that Mr. Gober had not been under a disability, as defined in the Social Security Act, from his alleged June 24, 2019 onset date through the date of the decision. (R. at 30).

## IV. DISCUSSION

Mr. Gober argues that the court should reverse the Commissioner's decision because the ALJ failed to properly evaluate his subjective complaints of pain in accordance with the Eleventh Circuit's pain standard. (Doc. 10 at 5–15). The court disagrees.

Under Eleventh Circuit precedent, a claimant attempting to establish disability through testimony of pain or other subjective symptoms must show evidence of an

underlying medical condition and either (1) "objective medical evidence that confirms the severity of the alleged pain arising from that condition" or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). If the ALJ finds a claimant's statements about his symptoms are not credible, the ALJ must "provide[ ] a detailed factual basis for [the] credibility determination," which substantial evidence must support. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

Mr. Gober testified that he cannot work due to piriformis syndrome, the need for a hip replacement, a broken rib, and sciatic nerve pain. (R. at 45–47; *see also id.* at 180). Mr. Gober explained that he can stand or walk for thirty-five minutes to an hour before he has to stop and that could possibly lift forty to sixty pounds. (*Id.* at 47). He also testified that he is unable to stand on his feet for more than two or three hours during the day. (*Id.* at 49).

After reviewing Mr. Gober's pain testimony, the ALJ concluded that Mr. Gober's "medically determinable impairments could be reasonably expected to cause" his alleged symptoms, but that Mr. Gober's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 25–26). In making this finding, the ALJ noted that Mr. Gober had a history of

chiropractic treatment from April 2017 until July 2018 for complaints of low back pain and tenderness in his right piriformis muscle and that a chiropractor had diagnosed Mr. Gober with spondylosis and piriformis syndrome on the right. (*Id.* at 26, citing *id.* at 264–370). Mr. Gober's doctors also referred him to physical therapy for his right piriformis pain. (R. at 419).

The ALJ explained that Mr. Gober sought treatment from his primary care physician for osteoarthritis in his right knee, low back pain, and piriformis syndrome for several years. (*Id.* at 26, citing *id.* at 374–499). But the ALJ noted that an April 2017 MRI of Mr. Gober's lumbar spine revealed only mild degenerative disc disease changes with a bone spur at L3. (R. at 26, citing *id.* at 406).

The ALJ acknowledged that Mr. Gober's primary care records showed that he complained about throbbing leg pain, an inability to bear weight, and left glute pain that radiated down his leg similar to what he had experienced with his right leg. (*Id.* at 26, citing r. at 443). The treatment notes also stated that Mr. Gober's chiropractic treatment initially was effective at treating his left piriformis syndrome, but he continued to experience flares which his doctor treated with muscle relaxers and steroids. (*Id.* at 461, 477, 486, 497). Some examinations revealed radiating extremity pain or tenderness in the piriformis muscle. (R. at 417, 433, 445, 463, 468, 474). But many of Mr. Gober's physical examinations showed no limb tenderness, normal gait, ability to stand without difficulty, and normal strength and

sensation. (*Id.* at 405–406, 417, 435, 445, 451 459, 485, 496). Mr. Gober told his primary care doctor that by April 2019 he felt like steroids were working "well" to treat what another doctor called tendonitis in his left buttocks, and he believed the tendonitis "was almost gone." (*Id.* at 483).

The ALJ noted that Mr. Gober saw an orthopedist during the spring of 2019. (R. at 26, citing *id.* at 502–513). X-rays of Mr. Gober's hip at that time were normal. (*Id.* at 502). The orthopedist injected Mr. Gober's hip with a steroid and prescribed muscle relaxers. (R. at 502–503). During a February 2019 visit, Mr. Gober had normal flexion and extension of his hip; he had no warmth or erythema and no pain with internal and external rotation. (*Id.* at 505). Although he was tender along the ischial[1] tuberosity[2] at the hamstring, the orthopedist told Mr. Gober that he did not see signs of any problem with the hip joint itself or any type of sciatica problems. (*Id.* at 505–506). The orthopedist injected the ischial area and Mr. Gober's hamstring and again prescribed muscle relaxers and stretching exercises. (R. at 506).

Mr. Gober returned a few weeks later complaining of pain in the posterior left hip and buttocks area that radiated "some" but not below his knee. (*Id.* at 507). On examination, Mr. Gober had some minimal pain with rotation of his hip and some

---

[1] The ischium is "[t]he lower and posterior part of the hip bone." Steadman's Medical Dictionary (2014) 458010.

[2] Tuberosity is "a large tubercle or rounded elevation, especially from the surface of a bone." Stedman's Medical Dictionary (2014) 947020.

tenderness along the ischial tuberosity and posterior sacroiliac area. (*Id.* at 507). But he had a negative straight leg raise. (R. at 507). The orthopedist told Mr. Gober he was not sure why his hip continued to bother him because most of his symptoms were consistent with hamstring tendonitis that typically would resolve with an injection, exercising, and stretching. (*Id.* at 508). The orthopedist injected Mr. Gober's ischial hamstring, prescribed mild pain medication and muscle relaxers, and ordered a pelvic MRI. (*Id.* at 508). The MRI showed no significant abnormality with Mr. Gober's left hip. (R. at 513).

In April 2019, the orthopedist wrote a letter to another physician and noted Mr. Gober's complaints about posterior buttocks and ischial pain. (R. at 509). But the orthopedist stated that he could not find an "orthopedic reason" for Mr. Gober's pain and also explained the Mr. Gober's MRI "did not show any type of problem about his left hip or buttock area." (*Id.*).

The ALJ also reviewed treatment notes from a neurologist that Mr. Gober saw in June 2019. (*Id.* at 27). During that examination, Mr. Gober's motor and sensory function was normal. (R. at 520). He had "very mild left hip pain with external rotation and flexion of the hip, but none on the right." (*Id.* at 520). And he had no tenderness over his sacroiliac (or SI) joints. (R. at 520). The neurologist was unable to palpate a mass in the region of his pain over the buttock. (*Id.* at 520). The neurologist saw no obvious mass of the sciatic nerve on Mr. Gober's MRI. (*Id.* at

520). And he noted that although it was difficult to discern from the imaging, he suspected an element of foraminal[3] stenosis[4] at L5-S1. (R. at 520). X-rays of Mr. Gober's spine revealed degenerative changes with anterior osteophytic[5] projections at L2-3 and L3-4. (*Id.* at 520). X-rays also showed grade 1 spondylolisthesis[6] at L5-S1 that did not change appreciably with flexion/extension views. (*Id.* at 520). The neurologist noted that Mr. Gober had "mild to moderate" osteoarthritis of the left hip. (R. at 520).

Finally, the ALJ noted that Mr. Gober sought treatment from another provider in August and December 2019. (*Id.* at 27, citing *id.* at 526–528, 587–598). During the August 2019 visit, Mr. Gober complained of chronic low back and left hip pain. (R. at 526). On examination, Mr. Gober had normal gait, intact sensation, normal deep tendon reflexes, and 5/5 muscle strength. (*Id.* at 527). During the December 2019 visit, Mr. Gober again complained of chronic pain in his left hip, but he reported that he felt better with steroids. (*Id.* at 592).

---

[3] Foraminal is "[p]ertaining to a foramen (a natural opening, especially in a bone)." Attorneys' Dictionary of Medicine and Word Finder (2021) F-153.

[4] Stenosis is the "abnormal narrowing of a body passage, opening, canal, or duct." Attorneys' Dictionary of Medicine and Word Finder (2021) S-292.1

[5] An osteophyte is "[a] bony outgrowth or protuberance. Stedman's Medical Dictionary (2014) 638450

[6] Spondylolisthesis is "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or on the sacrum." Steadman's Medical Dictionary (2014) 840330.

9

Mr. Gober argues that the ALJ did not properly evaluate his subjective complaints about his piriformis and hip pain because the ALJ discredited the pain testimony based on the lack of objective medical evidence. (Doc. 10 at 8). But the ALJ did not discredit Mr. Gober's testimony due to lack of objective medical evidence to support that testimony. Rather, the ALJ evaluated Mr. Gober's statements against numerous records containing objective medical evidence and found that his statements were not entirely consistent with that evidence (r. at 25–26) which the relevant regulations required her to do. *See* 20 C.F.R. § 404.1529(c)(4) ("We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.").

Mr. Gober also claims that the ALJ did not consider the record as a whole, and therefore, misconstrued the nature of his physical abilities. (Doc. 10 at 9). But the ALJ's decision demonstrates that she considered evidence that both supports and undermines Mr. Gober's allegations of disabling pain. (*See* R. at 26–27). The court

cannot reweigh the evidence or substitute its judgment for that of the ALJ, even if the evidence preponderates against the ALJ's finding.  *Winschel*, 631 F.3d at 1178; *Crawford,* 363 F.3d at 1158–59; *see also Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011)[7] ("The question is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").  Moreover, many of the records Mr. Gober claims that the ALJ failed to credit are medical reports where an examiner transcribed his reports of his symptoms.  (*See* doc. 10 at 10–13, citing r. at 264, 270, 274, 276, 278, 296, 300, 306, 310, 320, 372, 415, 502, 517, 526, 592).  But the question before the ALJ was not whether Mr. Gober's own description of his symptoms was consistent, but whether "objective medical evidence . . . confirms the severity of the alleged pain arising from that condition" or "the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer*, 395 F.3d at 1210.

    To the extent Mr. Gober claims that the ALJ did not specifically reference other medical evidence in the record that he claims supports his allegations of pain (*see* doc. 17 at 8–13), "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision[] . . . is not

---

[7] The court cites *Werner* as persuasive authority.  *See McNamara v. Gov't Emps. Ins. Co.*, __ F.4th __, 2022 WL 1013043, at *4 (11th Cir. Apr. 5, 2022); *see also* 11th Cir. R. 36-2.

a broad rejection which is not enough to enable [this court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (some alterations added). Here, the ALJ's recitation of the evidence of record was sufficiently thorough and accurate, and it demonstrates that she considered Mr. Gober's condition as a whole. (*See* R. at 25–26).

## V. CONCLUSION

Substantial evidence supports the ALJ's denial of Mr. Gober's application for a period of disability and disability insurance benefits, and the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this April 26, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE